Good morning. May it please the Court, my name is Linda Bell. I'm an Assistant Federal Defender for the District of Nevada and I represent William Scott Manciano, the appellant in this case. I would like to reserve two minutes for rebuttal and I will keep an eye on the clock. This case involves four certified issues stemming from the ineffectiveness of Mr. Manciano's uncertified issue that this Court has asked for some additional briefing on. I plan to focus my comments this morning first on one of the ineffective assistance of counsel's issue, that is the failure of counsel to convey a plea offer to Mr. Manciano prior to going to trial, and then on the uncertified issue, which is the lack of evidence of expressed malice to support conviction for attempted murder. Mr. Manciano's counsel in this case failed to convey a plea offer prior to trial. He provided Mr. Manciano with an affidavit that said that there was an offer of two to ten years and in a case where Mr. Manciano was facing approximately 70 years exposure, he was convicted and was sentenced to 43 years. The lawyer said that he was unsure whether he conveyed the offer because he was focused on going to trial, and Mr. Manciano indicates that the lawyer never discussed the plea offer with him. Ms. Bill, may I spell out for you a problem that I see, just so that you can respond to it? We're looking at this through the lens of AEDPA. So the question is, at least the determination, was it contrary to clearly established Supreme Court precedent? So when you look at the papers that were before the Nevada Supreme Court, there is no evidence of prejudice at all because the affidavit that Manciano submitted says nothing whatsoever about what he would or could have done. His brief does say he could have looked at the, had an opportunity to consider the offer and could have accepted it. But my problem is that the Nevada Supreme Court, while it might have said, well, could's good enough, didn't. And why is that clearly contrary to Strickland? Your Honor, I think that if we look at the process by which the Nevada Supreme Court got to that decision, it is clear that it is something that this Court does not need to defer to. And the reason is that Mr. Manciano initially presented a claim that he was, there was a plea offer, his lawyer did not give it to him, and he could or would have taken the deal had he known about it. The, which is something that this Court in Nunez said was enough to establish a case. He said he would have taken the offer. I mean, you know, words matter. And, you know, I understand people can say, well, it's C versus W. So what? But, and maybe, maybe the Nevada Supreme Court looking at it could have said could is the same as would. But the question is, is it contrary to clearly established Supreme Court law for the Nevada Supreme Court to say could means could and doesn't mean would? I think that, Your Honor, the problem goes back to the hearing, if we could call it that, in the district court on Mr. Manciano's post-conviction petition. Is that in the district court now? No, this is, this is in the state trial court. Well, in the state trial court, there was no, no evidence that there was even an offer. There was no nothing. But the problem is, is that the state and the judge prevented that evidence from coming forward. At the hearing, this is in the record at, starting at page 691, Mr. Kennedy appeared. Mr. Manciano was improper person. He was not brought to court because he was in prison. The judge denied his request for counsel. But Mr. Kennedy appeared and was trying to let the judge know, hey, there's something going on here. I really want to let you know what happened. And he says, Mr. Kennedy says, I received a copy of his writ. And there are some points I wouldn't mind putting out before you make a decision on it. If the state wouldn't mind, perhaps you're prepared to make a decision today. But I'd ask if you would allow me a couple weeks to submit an affidavit that may address certain things that are brought out in the petition, if the court would allow. And the district attorney says, says that, well, you know, it's his trial counsel. He can't file his post-conviction petition, which isn't really what Mr. Kennedy was attempting to do. And the DA says, we disagree that counsel is incompetent. So the court goes on and says, well, you know, I'm not going to appoint a lawyer. But and then Mr. Kennedy responds, I'm not coming in on behalf of Mr. Manciano. I'm just coming in to explain what happened because these things have to do with how I represented him. And the court says, I think I could just make some findings here. Why don't I just do that? And I think that'll take care of it. And let's go through the motions. Motion for appointment of counsel is denied. And then he goes through a few of the other things. And then he says, the allegations against Mr. Kennedy for ineffective assistance of counsel, I've gone through and it looks to me like Mr. Kennedy has done a very good job, as a matter of fact, representing him in the case. And all the points are made. So I find there's no basis for that whatsoever. So his trial lawyer is there trying to say, hey, judge, I want to talk to you about a few things that I think were problems. And the judge not only doesn't give Mr. Manciano a lawyer to help deal with that or bring him down so he can at least be there to represent himself at this hearing, but he completely cuts Mr. Kennedy off and doesn't allow him to make any of these representations to the court. And we can see from the affidavit that Mr. Kennedy provides that he would have been able to give the court the details of the offer and that he is not sure whether he conveyed that offer to Mr. Manciano. So there really was something to go on. So how does that fit within the rubric of AEDPA? So we're looking now at the Nevada State Supreme Court opinion. And there the court says the appellant, again, did not offer any specific facts about the nature of the offer. The district court denied this claim on the ground that the record was devoid of any offer, and the appellant failed to state he would have taken that offer. Now, how do you fit that within the requirements of AEDPA? Because Mr. Manciano was never given the opportunity to develop his claim. He had the basis for the claim. He wasn't given the opportunity to develop. So this court does not need to defer to those findings by the Nevada court. Well, see, he put in an affidavit. I mean, this is the problem. He put in an affidavit to the Nevada Supreme Court. He did on appeal. I'm sorry? I'm sorry. He did on appeal, along with the affidavit from Mr. Kennedy, which was submitted a little bit later. Yeah, but it doesn't say anything. I mean, it just says that there was an offer, but it doesn't say anything about what he would have done about it. That doesn't require anybody except him. It doesn't require any kind of evidence from somebody else. Take what Kennedy says at face value. I don't know whether I told him or didn't tell him. Assume he didn't tell him. Assume absolutely in your client's favor. Kennedy didn't tell him. Obviously, he should have told him. So what difference does it make? And so the only person who knows that is Manciano. Nobody else knows that. Your Honor, Mr. Manciano does say throughout his pleadings that he would or could have taken the offer. I think another important... He says he could have taken it, which is very different. I mean, his affidavit doesn't even say he could have. But there are points as well where he does say he would have considered the offer, and that's on page 507 of the record. In the federal court, he did. No, that actually is his reply in the state court, I believe. The reply to the state's opposition to his writ in the state court. He uses the word would. He uses them rather interchangeably throughout, which is a little confusing. But given that he's a pro se litigant, I think that issue should be weighed in. Let me ask a question. Are we limited to just what he said in his affidavit? Or can we look at the nature of the crimes, what he was charged with, what the potential consequences were, what the weight of the evidence was with respect to the arson versus the murder? Because, you know, my thinking is that it would be completely unreasonable not to take a plea offer of 2 to 10 years for the arson in exchange for getting the murder, attempted murder account dropped because that was the one that loaded on up to 70 years. And it seemed also from the evidence that there was a lot of evidence as to arson and that the murder, attempted murder, was a very weak case. So it seems to me if they'd actually had this discussion, it'd be a no-brainer, just take the 2 to 10 years. That's right, Your Honor. And I think that's a very important factor to look at here. Not only is Mr. Manciano saying, I could have taken the deal in light of the fact that exposure was 70 years. He ultimately got 40. A 2 to 10 is a pretty good deal. And his lawyer should have been having that conversation with him that, you know, this is Nevada and these juries are conservative and this is a deal that you want to think about. That's the problem here, isn't it? Because he would be speculating about something that didn't happen. For him to say, I would have accepted that offer puts him in a state of mind of having to say what he would have done about events that never occurred. And so I suppose we do have to grapple with the difference between the words, I could have accepted, which is a truthful thing. He was deprived of that opportunity to even say whether he would have accepted it or not. And I would have accepted it, which is a judgment about what he would have done if something had occurred which didn't occur, which has got to be speculation. And it's a hindsight statement which he would be making in light of subsequent events which wouldn't have taken place at the point where he would be saying I would have accepted it. So the fundamental problem here is without having informed him about the offer, he was deprived of an opportunity to do anything. And then the question is whether or not that deprivation is so fundamental in light of what happened and even if we ignore what happened to the nature of the attorney-client relationship that it deprived him of a fundamental due process, right? That's correct, Your Honor. I think that's why Judge Wardlaw's point was so important because when we look at what happened in this case, the denial of Mr. Manciano, the fundamental ability to make one of the few decisions defendants get to make is am I going to plead or am I going to go to trial? I interpret it as just the opposite. After he's gotten a 45-year sentence, he sure as heck can easily say I would have taken a deal if I'd known about it. And he never said it. But I think that's why it's important to look at where he was. He was basically full steam ahead on going to trial. That's what he wanted to do. His position was I didn't do any of this. Well, Your Honor, I think that's also why it's very important that people have lawyers because having an objective person let you know these are the risks you're facing, this is your option, you may really want to give this some thought may have changed Mr. Manciano's opinion about that. I mean, he never had the opportunity to make that decision. I certainly don't disagree. I mean, there's no question this is deficient performance assuming every fact in your favor. The real question is whether the Nevada Supreme Court  to the contrary on prejudice runs afoul of clearly established federal constitutional law on prejudice. And I believe given the lack of opportunity that Mr. Manciano had to develop this case it doesn't show effect on outcome. There seems to be people keep referring to saying that Manciano was focused on proceeding to trial but that's not what the declaration says. The declaration of Kirk Kennedy says that I was very focused on proceeding with this matter to trial. That's correct. There's nothing about Manciano being hell bent on going to trial no matter what. And Mr. Manciano has indicated that he would have talked to him about an Alford plea he was insistent that he did not do this but he has not said well, you know, I was going to go to trial no matter what and I wouldn't have considered any other possibility. Very briefly on the issue of sufficiency in Nevada express malice is required all that's here is a fire and maybe All that's here is a fire that started by someone who knows that there are three people sound asleep in a house. A house that he's in as well. Well I understand. Which I think is a really I mean you have to assume the arson now he knows he set fire to the house and he can get up and leave anytime he wants to. He doesn't say fire so if he said fire, get out, then you can figure well all he wanted to do was just burn the house down. If he tried to get them out, you can say well he was just trying to scare them. But here he sets fire to a house knowing there are three people who are sound asleep and can be asphyxiated I didn't say that very well by the smoke so why doesn't that add up to express malice? What would if it doesn't? I think if the fire had been set in somebody's bed that would be pretty good but here it's a fire in a garage. The fire burns for about 10 minutes before the people are alerted it burns for another 10 minutes it never even makes it into the house there's some smoke damage in the kitchen there's nothing in the living room nothing in the bedrooms all of the people come out of the house at the same time after a neighbor comes and knocks on the door Heather Workman testifies that Mr. Manciano is in bed with her when the knock comes on the door and he does walk out with everybody at the same time so there just isn't anything to indicate that he has any intent to do harm to those three people in the house I could see a difference between setting fire to the house at let's say 3 in the afternoon knowing that people are in there cooking, reading, whatever and setting fire to the house when he did, knowing that they are sound asleep I'm not sure Your Honor this is 8.30 on a Sunday morning I'm not sure that that's and he's in the house which I think is really important that that knock get lost is that he's in there too it kind of doesn't make sense if he's intending harm to these other people why would he be there with them and there has to be some and there has to be some showing even in cases where where somebody shoots at somebody there has to be some showing that they actually are intending to kill them over and above just that act that can't just be the abandoned and malignant heart or a reckless disregard there has to be some showing above that of the specific intent to harm the people and I'd like to reserve my last minute for rebuttal Your Honor Good morning May it please the Court My name is Jamie Resch I'm here on behalf of the Nevada Attorney General's Office for the Respondents I think this case overall is very interesting particularly the plea offer issue we've heard a lot of the main points that were raised on that issue but I'd like to go through a couple of things anyway it was raised as an ineffective assistive counsel claim and I realize that the courts focus primarily on the prejudice prong of the Strickland test but I don't want to concede the objectively unreasonable actions of counsel just yet obviously if the offer was made and he didn't tell Manciano about it, that would be objectively unreasonable and what Manciano was or wasn't told is obviously something that's between him and his attorney there would be no way to peer into that other than what the two of them have said but the finding of fact that we discussed earlier at the state habeas proceeding was that there was no offer no evidence was presented by Manciano of any offer at that time even though he apparently knew about it as early as the preliminary hearing in his case How do you respond to counsel's argument that Mr. Kennedy showed up and wanted to talk about that issue at the district court but the district court wouldn't let him I have two thoughts on that one is that Manciano knew what the offer was because he was told before the preliminary hearing so if he wanted to put the context of that offer into a state habeas petition there was nothing stopping him from doing so in fact what he did is put the vaguest representation of this claim at any point in time was in the state habeas proceeding he says there was a possible offer that he may have considered if he had been told about it What are you talking about when you're talking about before the preliminary hearing which preliminary hearing In Nevada there's a preliminary hearing before you proceed to trial and if I'm recalling correctly what Manciano says in his affidavit to the Nevada Supreme Court is that it was at that time that a public defender informed of the substance of this offer which apparently mirrors what he's claiming it currently was that it was 2-10 years in exchange for a plea to the arson charge and the attempted murder charges would be dismissed so it appears to me that he knew that at the time that he prepared a state habeas petition if he was serious about that offer or if I guess my point is it really existed what he could have done is put it into his state habeas petition and presented it to the court at that time the other thing is that you're right Kirk Kennedy his trial counsel was at that hearing and you know there's two ways to look at it obviously but I think that if he had a strong notion that this offer was made and he wanted to tell the court about it there was nothing stopping him from doing that he didn't say anything about it at that time it's only down the road that this claim continues to develop and becomes more the factual predicate for the claim develops as we go along when he gets to the Nevada Supreme Court suddenly oh well here's the substance of the claim it's 2-10 years and I'll enter my plea to arson and that's the claim that he repeats to the federal district court Would you have us assume that this was all made up that there was no offer well this is part of my pitch on the objectively unreasonable part of Strickland is that yes the state court finding a fact was that this claim was an offer but the presumption is going to be that that's the fact of the case but indeed is that true like I said if there was communication between the two of them there's no way to peer into that it's something that would be between his attorney and him but well that would not help us because we know what the two of them are going to say we have his trial counsel put an affidavit that says he doesn't remember if he conveyed an offer we have the opportunity to cross examine that's true but even cross examining him his answer is still going to be I don't remember that's what he says the claim is but there's another witness that would be called namely the person who made the offer that evidence that's potential evidence that could be presented as well as the evidence of the person who received the offer now not only one but two and the question of whether or not it was communicated all of that would be before the court in an evidentiary hearing yes and those points make sense I guess my only concern would be that that factual predicate would have been known to Manciano he knew who his public defender was at the time of the preliminary hearing that all should have been in the state habeas petition if he wanted to develop that factual record was that his lawyer at the time I thought that the record was that this person came to him as someone appointed and he says no no no you do not represent me I have a lawyer so he never heard an offer from someone who was his lawyer well the way I read his affidavit was that in fact he did have the public defender at that point said I'm hiring a private attorney I don't want to discuss this with you but at that point in time that the public defender was in fact his attorney and from what we have from Manciano he was conveyed the offer at that time he knew what the predicate for it was and he just chose for whatever reason not to put it in state court proceedings and then we end up with a finding of fact from the state habeas court that there was no evidence that an offer was ever made and Manciano has continued to improve his claim at each step of the way until we get to let's be fair he didn't have representation and then he got representation and obviously the development of the claim would improve with having a lawyer than being pro se of course it would improve if you bring an attorney into it you reach a better way of saying it but there is no right to counsel in these types of proceedings so that isn't something we should presume against him per se it's simply a matter of I'm simply saying that he knew the facts but then we should also not infer that the development of the claim means that it was originally false and now it's been trying to be better we shouldn't infer that either, right? well, no, and part of these issues were raised in a motion to dismiss that the concern was that it was unexhausted but continuing to change the claim so much to some point leads us to the point where just the factual basis for the claim hasn't been presented to the state supreme court it does seem that the state supreme court did not have the factual basis it just relied on what the district court had found that there was no evidence of an offer which we actually, from all this evidence it does seem like there was at least an offer well, again I'm not in a position where I want to agree with that necessarily Manciano's the one saying that I take it for what it is now the courts obviously went the easier way and I realize I'm making the more difficult argument here to look at the prejudice prong of the whole scenario and I can certainly take a look at that right now the concern, the first thing that pops out obviously is his use of the word could instead of the word would and I didn't want to get into a gigantic English lesson here today the concern is simply if you reword it a little bit take a look at a different ineffective type of claim now if he said, my trial counsel didn't object to something that happened at trial and if he had, I could have been found not guilty it sounds entirely speculative when you view it in that kind of context and I heard the discussion earlier and I guess I would just leave it at could is not the same as would even if there is some instance where you could interchange those two words, they are not 100% interchangeable and under EDPA the rule is if there's a gray area that the Nevada Supreme Court's opinion could have ended up in, and it did and they applied Strickland we defer to that decision Can you ever use, I would have accepted something that you never knew about? Well, you know towards where this is going I don't want to say that these types of errors are structural I think they clearly are not this isn't the first time this has come up before the 9th circuit where someone claims I wasn't told about an offer and we have Blalock and I think Jones was cited in our answer and those cases went into the whole well, what would you have done? You still need to affirmatively show prejudice if you want to satisfy Strickland I would just suggest that could does not do that It's such an artificial kind of rubric because if you have a good lawyer they're going to have read Blalock and they're going to say put in your affidavit, would and if you don't have any lawyer and you may not have read Blalock or understood that you have to say would instead of could I mean, it's just an artificial constraint that doesn't really tell us anything about the truth Well, I would suggest it's English, you know there's a proper usage of these words there's no evidence that Manciano doesn't know what he's talking about a lot of his filings were gigantic I mean, he had 30, 40 claims to originally begin with here What's his educational background? Is he a person that would know those terms are not to be used interchangeably? I would think so on the one hand, he has experience with the criminal justice system this isn't the first conviction he's endured taking a look at his Is that in the record? I was trying to find out if this was his first conviction I think that so anything before that No, he had the there was a manslaughter conviction out of California I think some of the documents pertaining to that were in a motion to correct an illegal sentence I did see them in the record try and find them for the court if you want Yeah, I'd appreciate a record cite to that May I follow up with a letter or do you want me to do it now? No, not right now. Do it afterwards and send it in with the The other thing is that the presentation of this claim happened all along at state habeas, he says I could have considered the claim he says the same thing all the way along well, he has the opinion from the state trial court and he has the opinion from the Nevada Supreme Court by the time he gets to federal court they both say the same thing you didn't say you would have accepted this offer so it's hard for me to agree that at this point Is it necessary to say I would have accepted it or I would have considered it? Well, I realize in his reply at the state habeas level he says I would have considered it. To me that is exactly the same thing as saying I could have taken the offer the only thing he's saying he would do is think about it and that doesn't affirmatively show prejudice Well, he was deprived of the opportunity to think about it Again, I don't believe these are structural errors so we need to perform that analysis and I realize that this is potentially a difficult claim for someone in my position. If he had said would, there would be a much more difficult discussion but thankfully I'm prepared to go a little step further and suppose that, you know, if we wanted to dig deeper, see what he really was thinking when he said could, is there any chance that he was confused and meant would? I don't think there is based on the record But let me ask you, I mean when the charges were brought, it seems to me that, I mean again, it just seems from the record that I have that the murder, attempted murder was a weaker case to prove to prove than the arson and sometimes an indictment would be written to have some additional charges that maybe are not as strong as others for the purpose of bargaining Okay, yeah, certainly And I'm sure you've done that yourself Oh, well We only bring charges supported by evidence Right, even the weakest of evidence. So, it seems to me it would be crazy not to accept the 2-10 for arson given the, and take the gamble on the murder which would increase the sentence, right? I agree, but you know, under the 9th Circuit precedent what we need to consider is not what he would do today, not with the benefit of hindsight what did he want to do at the time? No, I'm saying at the time given the situation One thing that has not changed in his entire presentation of his claims is steadfast claims of innocence that he has never once suggested that he would even plead guilty to these charges His talk is always of an Alford plea which, by the way, there is no evidence that the offer encompassed an ability to plead to Alford The understanding would be that maybe the state would be willing to take a guilty plea He's never once suggested that the state would not only cut him this wonderful deal in light of the charges and evidence against him but also allow him to avoid having to admit his guilt in open court But my concern is that the allegation is that he never alleges that he would actually plead guilty That's sort of punishing him for what may be very candid honesty, because what he's saying, as I understand it is I don't know what I would have done because it never got to the point where something was presented to me as an option and if you tell me that I need to now declare what I would have done if an option had been what ultimately happened to me that's a very difficult burden for me to carry All that he has to prove is reasonable probability that it would have made a difference Reasonable probability and if he says having it in front of me, I could have then made an informed decision but my lawyer deprived me of that ability that's as far as he can go If he says I would have accepted it, why wouldn't that be subject to an attack on credibility grounds Oh, of course you say it now But, was that true then? And so it's a disingenuous situation He's caught between a dilemma that cannot ever go in his favor Again, this is not a unique claim The Ninth Circuit has passed on this type of thing at least twice in the last decade The concern is that he has to affirmatively show prejudice and that just hasn't happened where he's claimed from the beginning of time that I didn't do this Even to this day in federal court he claims I'm innocent, I did not do this You can't deny him that presumption and the plea though Well, pursuant to Alford, but there's no there's no proof, there's no allegation at any point that the state was willing to take an Alford plea in this type of case And I guess, just to respond to your question a little further the concern is still that there is no structural error in this type of thing He still needs to affirmatively show prejudice and he hasn't done that at this point So, to sum up that argument I suppose I would say that we're applying Strickland, Nevada Supreme Court did that, so the concern is well, was that an objectively unreasonable application of that? I don't think it was Strickland clearly refers to affirmatively showing prejudice and it just hasn't happened in this case Let's talk about the uncertified issue Yes, the uncertified Reading the Nevada Supreme Court order dismissing the direct appeal Okay There's no mention of the attempted murder charge specifically at all In reading the rationale for finding sufficiency of the evidence I think I find one line that maybe possibly could be deemed to be a statement from which you could infer a deliberate intent to kill, and that's when the court says he was completely dressed and was carrying two Is that sufficient to show deliberate intent? Well, I recall the opinion I don't have it here right in front of me but I think there is another line where they talk about that the Manleys were awakened by neighborhood news that their house is on fire It says when the Manleys were awakened with the news that their house was on fire the three members of the Manley family quickly left the house in various stages of undress Right, but the primary point of all that is that they were sleeping and their house was on fire the fire having been started by Manciano No, it also says however, although Appellant left the house with the Manleys the court does acknowledge that Appellant left the house at the same time I don't disagree clearly it was around the same time there was a big debate in the record of who left first Right, but the court is saying that deliberate intent can be inferred solely from the fact that he was wearing shorts, a shirt, and slip-on shoes and was carrying his two bags and that's it that's what the court says I guess I read it slightly more expansively that the deliberate intent to kill comes from the fact that these people were sleeping and that their house was started on fire by Manciano I think it encompasses that obviously not in the clearest language that could ever be written, but the facts to support that inference are mentioned in there and it's obviously part of the record I think though that there is something specific on deliberate intent when we're talking about the charge that constitutes the reason for this greatest portion of his sentence I understand, and it's hard for me to stand there and say well the Nevada Supreme Court should have worded that better perhaps they should have included that It's sufficiently worded so that it meets the AEDPA standard Yes, I believe so, the record is obviously chock-full of evidence that these people were sleeping when the house was started on fire The opinion makes reference to that fact albeit in a slightly oblique way, but it is there and based on that we're able to say alright, they applied a state court case that uses Jackson v. Virginia they applied the correct standard evaluated the evidence and concluded that there was sufficient evidence on all charges, I think that's how they conclude so no, they didn't break out the attempted murders separately from the arson charge, but I think they said enough to cover all of the charges that were brought in the case So you think under Nevada law deliberate intent can be shown by the fact that he was dressed and had his bags when he came out of the house with the rest of them I believe that under Nevada law deliberate intent to kill can be inferred from the fact that he started this house on fire and he knew the people were sleeping inside it and that the Nevada Supreme Court opinion that you're looking at encompasses those facts not in as clear a sense as I just said them but clearly mention is made to them Do you think it's reasonably debatable? Not reasonably debatable no, especially considering the fact that the Nevada Supreme Court had the record of what happened at trial before when it considered these things, it's apparent what their decision was based upon I find it to be a reasoned decision on the merits so to speak but that would be my view of it of course That would be Let me pass one more thing on the severity of what happened To have an attempted murder charge I don't think you should peer into the whole what was the harm there's some talk of maybe the house didn't burn all that much or it was started in the garage not the bedrooms for example but same sort of thing if you do fire a gun at someone and let's say you miss they're not hurt at all but that doesn't mean there wasn't a deliberate intent to kill when he went and did these things started the garage on fire the garage was consumed in flames by the time the fire department arrived and I think there's a reasonable inference that the house would have continued to burn obviously if not for the arrival of the fire department which was predicated by the happenstance notice of a neighbor coming and waking everybody up I believe there's sufficient evidence of intent to kill clearly enough that any rational trier of fact under Jackson v. Virginia could so infer and that's exactly what happened in this case therefore there should be no granting of any habeas relief if there's nothing further I'll conclude Thank you Mr. Resch Thank you I just have a couple points Judge Ward's allowed to answer your question Mr. Mantiano had a GED his pre-sentence investigation report is found at page 741 of the record and the GED parts on page 745 there is no it's a he didn't graduate from high school he took a test to get a diploma ok ok but what about reference to a prior manslaughter he was he pled guilty to manslaughter after a series of very unfortunate events that is explained in detail in the pre-sentence report where his infant daughter was killed by a babysitter and then he was in a fight later on and stabbed somebody it's sort of all tied in together but he was he pled guilty to a manslaughter and was given a sentence of three years also the record does not reflect the public defender represented Mr. Mantiano at most they would have made one appearance an initial appearance with him thank you thank you the matter just argued will be submitted and the court will be adjourned
judges: Rymer, Wardlaw, Ware